UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sonya N. R.,[1] Plaintiff, v. Frank J. Bisignano, Commissioner of Social Security Administration, Defendant. | C/A No. 9:25-cv-07219-JDA-MHC **REPORT AND RECOMMENDATION** |

Plaintiff Sonya N. R. (Plaintiff) filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Administrative Law Judge's (ALJ's) final decision denying her claim for Disability Insurance Benefits (DIB) under the Social Security Act (Act). This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). For the reasons that follow, the undersigned recommends that the ALJ's decision be reversed and remanded for further administrative review.

## I. BACKGROUND[2]

Plaintiff applied for DIB on March 14, 2022, alleging disability beginning November 17, 2019. *See* R.pp. 86, 236–47. Plaintiff's claim was denied initially and upon reconsideration, and Plaintiff then requested a hearing before an ALJ. R.pp. 85–106, 127–28. A video hearing, at which Plaintiff, represented by counsel, and a vocational expert testified, was held on November 6, 2024. R.pp. 37–67. The ALJ thereafter denied Plaintiff's claim in a decision issued on January 6, 2025,

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, because of significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

[2] Citations to the record refer to the page numbers in the Social Security Administration Record. *See* ECF No. 13.

finding that Plaintiff was not disabled from the alleged date of onset through the date last insured. R.pp. 18–30. On June 11, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R.pp. 2–6. This appeal followed.

Because this Court writes primarily for the parties who are familiar with the facts, the undersigned dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Discussion section below.

## II. APPLICABLE LAW

### A. Scope of Review

Jurisdiction of this Court is pursuant to 42 U.S.C. § 405(g). Under § 405(g), judicial review of a final decision regarding disability benefits is limited to determining (1) whether the factual findings are supported by substantial evidence, and (2) whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Accordingly, a reviewing court must uphold the final decision when "an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (internal quotation marks omitted).

"Substantial evidence" is an evidentiary standard that is not high: it is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). A reviewing court does not reweigh conflicts in evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that

decision falls on the [ALJ].” *Id*. (alteration in original) (internal quotation marks and citation omitted). However, this limited review does not mean the findings of an ALJ are to be mechanically accepted, as the “statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action.” *Howard v. Saul*, 408 F. Supp. 3d 721, 725–26 (D.S.C. 2019) (quoting *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969)).

**B. Social Security Disability Evaluation Process**

To be considered “disabled” within the meaning of the Social Security Act, a claimant must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423. The Social Security Administration established a five-step sequential procedure to evaluate whether an individual is disabled for purposes of receiving benefits. *See* 20 C.F.R. § 404.1520; *see also Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (outlining the questions asked in the five-step procedure). The burden rests with the claimant to make the necessary showings at each of the first four steps to prove disability. *Mascio*, 780 F.3d at 634–35. If the claimant fails to carry her burden, she is found not disabled. *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). If the claimant is successful at each of the first four steps, the burden shifts to the Commissioner at step five. *Id*.

At the first step, the ALJ must determine whether the claimant has engaged in substantial gainful activity since her alleged disability onset date. 20 C.F.R. § 404.1520(b). At step two, the ALJ determines whether the claimant has an impairment or combination of impairments that meet the regulations’ severity and duration requirements. *Id.* § 404.1520(c). At step three, the ALJ considers whether the severe impairment meets the criteria of an impairment listed in Appendix 1

of 20 C.F.R. part 404, subpart P, or is equal to a listed impairment. If so, the claimant is automatically eligible for benefits; if not, before moving on to step four, the ALJ assesses the claimant's residual functional capacity (RFC).[3] 20 C.F.R. § 404.1520(d), (e); *Lewis*, 858 F.3d at 861.

At step four, the ALJ determines whether, despite the severe impairment, the claimant retains the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(e), (f). If the ALJ finds the claimant capable of performing her past relevant work, she is not disabled. *Id.* § 404.1520(f). If the requirements to perform the claimant's past relevant work exceed her RFC, then the ALJ goes on to the final step.

At step five, the burden of proof shifts to the Social Security Administration to show that the claimant can perform other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(g); *Mascio*, 780 F.3d at 634–35. Typically, the Commissioner offers this evidence through the testimony of a vocational expert answering hypotheticals that incorporate the claimant's limitations. *Mascio*, 780 F.3d at 635. "If the Commissioner meets h[is] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Id*.

## III. <u>ADMINISTRATIVE FINDINGS</u>

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Plaintiff was disabled from the date of the alleged onset through the date last insured. R.pp. 18–30. The ALJ found, in pertinent part:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2023.

[3] The RFC is "the most the claimant can still do despite physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (internal quotation marks and citations omitted).

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 17, 2019 through her date last insured of September 30, 2023 (20 CFR 404.1571 *et seq.*). . . .

3. Through the date last insured, the claimant had the following severe impairments: spine disorders status post L4-L5 microdiscectomy, osteoarthrosis and allied disorders, obesity, and headaches (20 CFR 404.1520(c)). . . .

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . .

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured over the course of an 8-hour workday, in 2-hour increments, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she could never climb ladders, ropes and scaffolds and crawl; could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; and could frequently perform handling and fingering on the dominant left. The claimant could occasionally be exposed to loud to very loud noise, and hazards associated with unprotected dangerous machinery or unprotected heights. The claimant could also concentrate, persist and maintain pace sufficient to understand, remember and carry out simple, routine tasks. . . .

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). . . .

7. The claimant was . . . 42 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). . . .

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 17, 2019, the alleged onset date, through September 30, 2023, the date last insured (20 CFR 404.1520(g)).

R.pp. 20–29.

## IV. DISCUSSION

Plaintiff argues that remand is warranted because the ALJ (1) erred in his analysis of Plaintiff's subjective complaints and (2) incorrectly determined that Plaintiff would not be off task by discounting her migraines. ECF No. 16 at 23–32. The Commissioner asserts that the ALJ applied the correct law and relied on substantial evidence to find that Plaintiff was not under a disability. ECF No. 17 at 18–19. In reply, Plaintiff suggests the ALJ and Commissioner cherry-picked the record regarding Plaintiff's pain and functionality. ECF No. 18 at 1–6. Upon review, the undersigned agrees with Plaintiff that remand is warranted.

### A. RFC Assessment Generally

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).[4] A claimant's RFC, which represents the most "an individual can still do despite his or her limitations," must be based on all the relevant evidence in the record, and should account for all the claimant's medically determinable impairments. *Id.* at *2; 20 C.F.R. § 404.1545(a).

In evaluating an RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (alteration in original) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "'Only after

[4] Social Security Rulings, or "SSRs," are "interpretations by the Social Security Administration of the Social Security Act." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995). They do not carry the force of law but are binding on all components of the Social Security Administration, 20 C.F.R. § 402.160(b)(1), as well as on ALJs when they are adjudicating social security cases. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work' of which he believes the claimant to be capable." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Monroe*, 826 F.3d at 179).

**B. Evaluation of Subjective Complaints**

A claimant's subjective statements are among the evidence the ALJ must consider and reconcile with the RFC assessment. *See Lewis*, 858 F.3d at 865–66.

"The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7. Every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by "a narrative discussion describing [] the evidence" that supports it. *Dowling*, 986 F.3d at 387 (alteration in original) (quoting *Thomas*, 916 F.3d at 311).

"[A]n ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms." *Lewis*, 858 F.3d at 865–66 (citing 20 C.F.R. § 404.1529(b)–(c)). "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Id.* at 866 (citing 20 C.F.R. § 404.1529(b)). The ALJ proceeds to the second step only if the claimant's impairments could reasonably produce the symptoms she alleges. *See* 20 C.F.R. § 404.1529(c)(1). At the second step, the ALJ is required to "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. § 404.1529(c)). The ALJ must "evaluate whether the [claimant's] statements are consistent with objective medical evidence and the other evidence." *Titles II & Xvi:*

*Evaluation of Symptoms in Disability Claims*, SSR 16-3P, 2017 WL 5180304, at *6 (S.S.A. Oct. 25, 2017).

Pursuant to SSR 16-3p, the ALJ must explain which of the claimant's symptoms he found "consistent or inconsistent with the evidence in [the] record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions." *Id.* at *8. The ALJ must evaluate the "individual's symptoms considering all the evidence in [the] record." *Id.* Importantly, the ALJ is not to evaluate the claimant's symptoms "based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled." *Id.* at *5; *see Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020) ("We also reiterate the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms.").

In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ is required to take into consideration evidence such as a claimant's daily activities; the location, duration, frequency, and intensity of her symptoms; precipitating and aggravating factors; the type and dose of medications required to alleviate her symptoms; any treatment, other than medication, received to relieve the symptoms; and any measures used to relieve the symptoms. *See* SSR 16-3P, 2017 WL 5180304, at *7–8. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be *clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms*." *Id.* at *10 (emphasis added). The ALJ must "build an accurate and logical bridge" between the evidence and his conclusion as to the intensity, persistence, and limiting effects of the claimant's symptoms. *Monroe*, 826 F.3d at 189.

### C. ALJ's RFC Determination

On appeal, Plaintiff argues that the ALJ's conclusions regarding Plaintiff's subjective complaints are not supported by substantial evidence because the ALJ broadly rejected her description of symptoms without any meaningful discussion or explanation, and the ALJ did not acknowledge any statements made by Plaintiff as to her functional limitations, failing to address relevant factors including Plaintiff's minimal activities of daily living. ECF No. 16 at 23–26. In response, the Commissioner argues that Plaintiff's contention of error amounts to a request that the Court reweigh the evidence, suggesting that the ALJ did not ignore Plaintiff's subjective complaints but instead weighed them against the record as a whole. ECF No. 17 at 7–14.

The ALJ found that Plaintiff had the RFC to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except that she could never climb ladders, ropes and scaffolds and crawl; could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; and could frequently perform handling and fingering on the dominant left. The claimant could occasionally be exposed to loud to very loud noise, and hazards associated with unprotected dangerous machinery or unprotected heights. The claimant could also concentrate, persist and maintain pace sufficient to understand, remember and carry out simple, routine tasks.

R.p. 23.

The ALJ then explained that, "[i]n making this finding, [he] . . . considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p[,] [and he] also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." R.p. 24.

The ALJ then proceeded to the two-step analysis set forth in SSR 16-3p:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

> consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*.[5]

R.p. 24 (emphasis added). The ALJ then went on to work through certain medical records pertaining to Plaintiff's alleged disabling conditions, including Plaintiff's back pain (MRIs, microdiscectomy, physical exam findings), left foot injury (MRIs, x-rays), bilateral knee pain (x-rays, injections and physical therapy without surgical intervention due to Plaintiff's weight, with soreness noted), headaches (neurology treatment, preventative medication, and occipital never block), and obesity (noted to exacerbate Plaintiff's musculoskeletal pain). R.pp. 24–26.

In the decision, the ALJ acknowledged Plaintiff's subjective complaints related to her conditions from her testimony four times: (1) noting Plaintiff testified that she lived with her husband and son to assess her as only having a mild limitation in interacting with others, R.p. 22; (2) noting, without further assessment, that Plaintiff "reports symptoms of chronic musculoskeletal pain, especially in her knees and lower back, migraines, low energy, and panic and anxiety," R.p. 24; (3) noting he considered Plaintiff's "testimony relating to a left hand injury resulting in surgery on her left ring finger in 2015 in limiting her to frequent performance of handling and fingering with the dominant left hand[,]" R.p. 26; and (4) in assessing the persuasiveness of the prior administrative findings from the state agency medical consultants, noting that additional evidence presented at the hearing level, "especially consideration of the combined effect of the claimant's physical impairments with her obesity through the date last insured demonstrates the need for a limitation to work at the sedentary exertional level[,] [and] consideration of matters relating to the

[5] Later in the opinion, the ALJ made a nearly identical determination of SSR 16-3p's second step, noting, "As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not fully supported by the objective clinical findings and observations of record." R.p. 27.

physical effects of pain, fatigue, and medications supports the limitation to the performance of simple, routine tasks[,]" R.p. 27.

**D. Result**

Largely absent from the opinion is any discussion of Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms to which she attested at the hearing or described to medical providers. In the absence of any substantive analysis of these subjective complaints, it logically follows that the ALJ's opinion lacks any explanation as to how or why the ALJ found Plaintiff's subjective statements to not be entirely consistent with the medical evidence and other evidence in the record.

SSR 16-3p expressly provides that an ALJ decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *10. Here, however, the ALJ does not explain which, if any, statements he found to be inconsistent or provide any reasons for why he found Plaintiff's statements regarding her symptoms to be inconsistent. In essence, step two of the two-step process set forth in SSR 16-3p is virtually absent from the opinion. *See Lewis*, 858 F.3d at 866 (an ALJ must "*evaluate* the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities" (emphasis added)). Without clear articulation of how the ALJ evaluated Plaintiff's symptoms, meaningful review is frustrated.

The Commissioner argues that the ALJ's symptom evaluation should be afforded significant deference, insisting it is Plaintiff's burden to establish the existence of impairments that prevent her from working and the ALJ was not required to accept her allegations merely because

the evidence established severe impairments. ECF No. 17 at 8 (citing *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984); *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 68 (4th Cir. 2014)). But here, there is no such evaluation to which this Court can defer. Indeed, as the Commissioner notes, "an ALJ has the 'sole responsibility to weigh the claimant's complaints against the record as a whole,' and a reviewing court should not interfere with that assessment where 'evidence in the record supports the ALJ's conclusions.'" *Id.* (citing *Delesline-Meggett v. Saul*, No. 5:20-CV-1411-KDW, 2021 WL 2389779, at *10 (D.S.C. June 11, 2021), *aff'd sub nom. Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802 (4th Cir. Nov. 28, 2023)).

But tellingly, the Commissioner does not point to any part of the decision in which the ALJ explains his evaluation of Plaintiff's symptoms or *why* he concluded that Plaintiff's symptoms are not entirely consistent with the record. Instead, the Commissioner merely notes that the ALJ discussed Plaintiff's medical records and made the boilerplate statement that Plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms were inconsistent with the record. *Id.* at 10–12. After doing so, the Commissioner provides post-hac rationale for how these records could support the ALJ's conclusory statement that the reported intensity, persistence and limiting effects of Plaintiff's subjective symptoms are not entirely consistent with the medical evidence and other evidence in the record. *See id.* at 11–16.

Indeed, the Commissioner highlights the ALJ's discussion of Plaintiff's medical records, including "full strength and sensation in her bilateral lower extremities," *id.* at 10 (citing R.p. 25), normal nerve conduction studies and physical examination records, *id.* at 11, and Plaintiff's leg and foot impairments. *Id.* However, in discrediting Plaintiff's conditions, the Commissioner includes records that were not addressed or highlighted by the ALJ to support his determinations. *See id.* Though the Commissioner noted that Plaintiff had leg and foot impairments, he suggested:

> [T]he record shows that Plaintiff's symptoms improved (*see* Tr. 1765, from September 2023 with Plaintiff reporting her leg improving and only having pain when "on [her] feet quite a bit,") despite limited compliance (*see* Tr. 1311 discharged for non-compliance with physical therapy in July 2023) with routine conservative treatment (Tr. 25, citing Tr. 830–33). With regard to Plaintiff's anemia, the record shows only one doctor's visit for this condition, from June 2022, which noted she had not been seen since 2018, and had not taken her medications for a few months prior (Tr. 772). . . .
>
> The ALJ further relied on the prior administrative medical findings of State agency expert medical consultants . . . [who] not[ed] Plaintiff was "often noncompliant [with] medications and medical regimens," . . . [and] found that Plaintiff was able to perform work at the light exertional level, with additional postural, manipulative, and environmental limitations. (Tr. 86–106).

*Id.* at 11–12. Though perhaps these records support the ALJ's conclusion, the undersigned is left to speculate as to whether the ALJ even assessed these records at all. The Commissioner's attempt to piece together the record to provide an explanation absent from the decision itself does not comport with the legal requirements.

The Court "cannot accept post-hoc rationalizations not contained within the ALJ's decision." *Hilton v. Astrue*, No. CA 6:10-2012-CMC, 2011 WL 5869704, at *4 (D.S.C. Nov. 21, 2011); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *see also Arakas*, 983 F.3d at 109 (rejecting the Commissioner's argument as "a meritless post-hoc justification"); *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013) (rejecting the Commissioner's attempt to justify the ALJ's denial of disability benefits as a post-hoc rationalization).

Moreover, it is not clear from the decision how, if at all, the ALJ considered Plaintiff's hearing testimony in determining that Plaintiff's subjective statements of the limiting effects of her symptoms were not entirely consistent with the record. It is well-settled that in evaluating a

claimant's pain-related complaints, an "ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *see Arakas*, 983 F.3d at 100 (finding reversible error and explaining that because the "ALJ selectively cited evidence concerning tasks which [plaintiff] was capable of performing and improperly disregarded her qualifying statements[,] . . . he failed to build an accurate and logical bridge from the evidence to his conclusion" (internal quotation marks omitted) (citing *Monroe*, 826 F.3d at 189; *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006))).

Plaintiff testified at the hearing that, as of the date last insured, the longest she could sit was ten to fifteen minutes, after which her legs began to go numb. R.p. 46. The condition required her to move around and shift from hip to hip to try to get feeling back in her legs and toes. R.pp. 46–47. She also testified that she was unable to close her fist completely due to a shattered knuckle on the ring finger of her left hand. R.pp. 44–45. This issue makes it difficult for Plaintiff to do activities requiring dexterity, like buttoning a shirt or putting on a necklace. R.pp. 58–59.

Plaintiff acknowledged that she could shower and dress herself. R.pp. 50–51. She also explained that she received her groceries using Instacart delivery, never went to the grocery store to get her own items, and did not cook at home. R.pp. 53–54. She indicated that on a typical day, she sits in her recliner and assists her son with his homeschooling. R.p. 55. If she can get by without it, she does not leave the house (and did not in September 2023, the date last insured). R.p. 55. The furthest she would typically drive was ten to fifteen miles; any further and her right knee would throb excruciatingly. R.p. 58.

The ALJ's reliance on evidence that Plaintiff can help her son with homework, prepare simple meals, drive, go out in public independently, and manage her finances, *see* R.pp. 21–22—without consideration of the very limited extent to which she can perform these activities as set

forth in her testimony—suggests that the ALJ may not have properly considered Plaintiff's daily activities in evaluating her subjective statements.[6] And though the Commissioner argues that the ALJ did not ignore Plaintiff's complaints because he addressed her alleged difficulties with standing, walking, lifting, reaching, using her hands, and performing certain postural maneuvers by limiting to her to a restricted range of sedentary, simple work, *see* ECF No. 17 at 14 (citing R.p. 23), neither the Commissioner nor the ALJ has explained why the ALJ failed to address Plaintiff's complaints regarding her inability to sit for extended periods of time, *see* R.p. 46. Though it is quite possible that the ALJ did not find Plaintiff's testimony regarding these symptoms credible, he was still required to include any such analysis in his opinion so that it could be meaningfully reviewed. Without explanation from the ALJ, as required by SSR 16-3p, the undersigned is left to guess at which of Plaintiff's statements regarding the limiting effects of her symptoms the ALJ found inconsistent and why. *See* SSR 16-3P, 2017 WL 5180304, at *10.

The ALJ's perfunctory statements that Plaintiff's allegations of disabling limitations are not fully consistent with the medical record and other evidence are insufficient to adequately explain why the ALJ reached his conclusion and which aspects of the Plaintiff's testimony or other reported symptoms were discounted. *See Montgomery v. Kijakazi*, No. CV 0:21-3074-JD-PJG, 2022 WL 17853557, at *5–6 (D.S.C. Oct. 26, 2022) ("[T]he ALJ's cursory statements that Plaintiff's allegations of disabling limitations are not fully consistent with the medical evidence is insufficient to adequately explain why the ALJ reached this conclusion and which aspects of the

[6] Indeed, the Commissioner's brief suggests that "the ALJ considered Plaintiff's self-reported activities of daily living, including her ability to tend to personal care, prepare simple meals, drive, independently attend medical appointments, and shop in stores with some difficulty." ECF No. 17 at 13 (citing R.p. 22). However, there are no references on the cited page (nor in the opinion as a whole) to Plaintiff's self-care, attendance at medical appointments, or shopping in stores. Though perhaps the Commissioner finds those points to be relevant to the ALJ's determination, the specific references are absent from his analysis.

Plaintiff's testimony was discounted. . . . Remand is required here as the court is simply unable to determine whether the ALJ's evaluation of Plaintiff's subjective complaints, which necessarily impacts other aspects of the decision, is supported by substantial evidence."), *report and recommendation adopted sub nom. Wanda M. v. Kijakazi*, No. 0:21-CV-03074-JD, 2022 WL 17852614 (D.S.C. Dec. 22, 2022); *Rickman v. Kijakazi*, No. CV 4:22-509-RMG, 2022 WL 17663679, at *3 (D.S.C. Dec. 14, 2022) ("'[A] necessary predicate to engaging in substantial evidence review is a record of the basis of the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and the specific application of the pertinent legal requirements to the record evidence.'" (quoting *Radford*, 734 F.3d at 295)); *Martins v. Berryhill*, No. 2:18-CV-1664-MGL-MGB, 2019 WL 3101652, at *4 (D.S.C. July 1, 2019) ("[I]t is not enough for ALJs 'simply to recite the factors described in the regulations for evaluating symptoms.' The ALJ's decision does not even do that, let alone demonstrate the ALJ considered all the factors. Thus, it is unclear whether the ALJ actually analyzed the record under the factors or whether she found any factors inapplicable (and, if so, why)." (internal citations omitted) (citing SSR 16-3P, 2017 WL 5180304, at *10)), *report and recommendation adopted sub nom. Martins v. Saul*, No. 2:18-CV-1664-MGL, 2019 WL 3080809 (D.S.C. July 15, 2019). Without explanation by the ALJ regarding how he considered Plaintiff's subjective statements, he has failed to "build an accurate and logical bridge" from the evidence to his conclusion. *See Arakas*, 983 F.3d at 100.

Thus, remand here is required where the undersigned is unable to determine whether the ALJ's evaluation of Plaintiff's subjective complaints (to the extent any evaluation was made) is supported by substantial evidence. *See Mascio*, 780 F.3d at 636. Accordingly, this case should be remanded for further consideration, to include an explanation of the ALJ's evaluation of Plaintiff's subjective complaints and how he ultimately arrived at the RFC determination.

**E. Remaining Allegation of Error**

Plaintiff also argues that the ALJ failed to include a time off task calculation by neglecting to consider her migraines. ECF No. 16 at 32. Because the undersigned has determined that the ALJ failed to consider Plaintiff's subjective complaints of her symptoms in his formulation of Plaintiff's RFC, the undersigned declines to address this remaining claim of error. Upon remand, however, the ALJ should take such claim into consideration. With respect to any remaining claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration. *See Hancock v. Barnhart*, 206 F. Supp. 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

## V. CONCLUSION

It is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative review.

The parties are referred to the Notice Page attached hereto.

Molly H. Cherry
United States Magistrate Judge

July 29, 2026
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).